IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-354

No. COA20-336

Filed 20 July 2021

Forsyth County, No. 02 CRS 60325, 02 CRS 60369

STATE OF NORTH CAROLINA

v.

JAAMALL DENARIS OGLESBY, Defendant.

Appeal by Defendant from an order entered on 4 September 2019 by Judge William A. Wood in Forsyth County Superior Court. Heard in the Court of Appeals 13 April 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Robert C. Ennis, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defendant Jillian C. Katz, for the Defendant.*

JACKSON, Judge.

¶ 1 Jaamall Denaris Oglesby ("Defendant") appeals from the trial court's resentencing order, which was entered following a post-conviction motion for appropriate relief. The issues presented by this resentencing appeal are (1) whether the trial court erred in only resentencing Defendant on some (but not all) of his convictions; (2) whether Defendant received ineffective assistance of counsel at his resentencing hearing; and (3) whether the trial court violated the Eighth Amendment

by resentencing Defendant to a *de facto* life without parole sentence, given that Defendant was a juvenile at the time of the offense. We conclude that the trial court committed no error.

## I.  Factual and Procedural Background

¶ 2         On 7 September 2002, when Defendant was 16 years old, Defendant and several accomplices robbed a convenience store at gunpoint. The group then proceeded to rob a different store at gunpoint the following evening, 8 September 2002. On 10 September 2002, the group kidnapped a custodian, Scott Jester, from a restaurant in Winston-Salem, North Carolina. They drove down the Interstate with Jester for several miles, until Defendant instructed the driver to stop at an exit, where Defendant pushed Jester out of the car, ordered him to lay flat on the ground, and shot him three times in the back of the head.

¶ 3         On 7 July 2003, Defendant was indicted by a Forsyth County Grand Jury for first-degree murder, first-degree kidnapping, and attempted armed robbery, in connection with the murder of Mr. Jester that occurred on 10 September 2002. On 3 November 2003, Defendant was also indicted for two counts of robbery with a dangerous weapon in connection with the two convenience store robberies that occurred on 7 and 8 September 2002.

¶ 4         On 24 May 2004, Defendant pleaded guilty to the two armed robbery charges, but the trial court postponed sentencing on those charges until Defendant could be

tried on the remaining three charges. Also on 24 May 2004, the trial court heard and ultimately denied Defendant's motion to suppress certain incriminating statements he had made to law enforcement officers during an interrogation.

¶ 5 Defendant's trial was held in May 2004 in Forsyth County Superior Court, Judge Catherine Eagles presiding. On 28 May 2004, the jury found Defendant guilty of first-degree murder (under the felony murder rule), first-degree kidnapping, and attempted robbery. The trial court sentenced Defendant to the following consecutive terms: (1) 95 to 123 months for one armed robbery charge; (2) 95 to 123 months for the second armed robbery charge; (3) life imprisonment without parole ("LWOP") for first-degree murder; (4) 29 to 44 months for kidnapping; and (5) 77 to 102 months for attempted armed robbery. Defendant appealed.

¶ 6 On 6 December 2005, this Court filed an opinion remanding the case in part for resentencing on the two armed robbery convictions (based on a *Blakely* error in failing to submit the aggravating factors to the jury), and arresting judgment on either the kidnapping or armed robbery conviction (based on a double jeopardy violation in convicting Defendant of both the predicate felony and felony murder). *See State v. Oglesby*, 174 N.C. App. 658, 622 S.E.2d 152 (2005), *aff'd in part, vacated in part*, 361 N.C. 550, 648 S.E.2d 819 (2007); *Blakely v. Washington*, 542 U.S. 296 (2004) (holding that any aggravating factor which increases the penalty for a crime must be submitted to the jury and proved beyond a reasonable doubt).

¶ 7          On 24 August 2007, our Supreme Court vacated in part this Court's decision and remanded for a resentencing on the armed robberies, after concluding that this Court applied an erroneous standard of review to evaluate the *Blakely* claim. *See State v. Oglesby*, 361 N.C. 550, 648 S.E.2d 819 (2007). On 6 November 2007, this Court duly reconsidered Defendant's *Blakely* claims under the harmless error standard, and ultimately upheld the armed robbery sentences after determining that the failure to submit the aggravating factors to the jury was harmless error. *See State v. Oglesby*, 186 N.C. App. 681, 652 S.E.2d 71, 2007 WL 3256666 (unpublished), *disc. review denied*, 362 N.C. 478, 667 S.E.2d 234 (2008). In compliance with this Court's mandate, on remand the trial court consequently arrested judgment on Defendant's attempted robbery conviction (based on the double jeopardy violation).

¶ 8          On 9 April 2013, Defendant filed a motion for appropriate relief ("MAR") in Forsyth County Superior Court based on the newly-issued United States Supreme Court decision in *Miller v. Alabama*, 567 U.S. 460 (2012), which held that a juvenile offender may not be sentenced to mandatory LWOP. Defendant's MAR argued that, under *Miller*, his LWOP sentence violated the Eighth Amendment's prohibition on cruel and unusual punishment because he was only 16 at the time of the offense. The State responded on 10 April 2015 to request a one-year stay, asserting that our courts had not yet determined whether *Miller* could apply retroactively in cases such as Defendant's. The trial court granted the requested one-year stay on 5 May 2015.

Defendant filed an amended MAR on 31 August 2016, asserting that it had been declared in *Montgomery v. Louisiana*, 577 U.S. 190 (2016), that *Miller* applied retroactively. The State responded on 7 November 2016, agreeing that *Miller* applied retroactively and that Defendant was entitled to a resentencing hearing. On 17 May 2017, Judge Richard S. Gottlieb entered an order allowing Defendant's amended MAR, and awarding him a resentencing hearing for the limited purpose of: (1) resentencing Defendant's LWOP murder sentence (in accord with *Miller*); and (2) arresting judgment on either the kidnapping or attempted armed robbery sentence (in accord with this Court's earlier remand).

¶ 9 On 26 August 2019, a resentencing hearing—the hearing at issue in this case—was held in Forsyth County Superior Court, Judge William A. Wood presiding. The trial court was tasked with resentencing Defendant on his murder, kidnapping, and attempted armed robbery convictions, in light of *Miller* and N.C. Gen. Stat. § 15A-1340.19B (the statute which governs sentencing of juvenile offenders convicted of murder).

¶ 10 The parties agreed that, because Defendant's murder conviction was based solely on the felony murder rule, the trial court was statutorily obligated to sentence Defendant to life (with the possibility of parole after 25 years) for the murder conviction. *See* N.C. Gen. Stat. § 15A-1340.19B(a) (2019) (providing that when "the sole basis for" a juvenile defendant's murder conviction "was the felony murder rule,

then the court shall sentence the defendant to life imprisonment with parole"); *id.* § 15A-1340.19A (defining "life imprisonment with parole" to mean that "the defendant shall serve a minimum of 25 years imprisonment prior to becoming eligible for parole").

¶ 11     In contrast, the main point of contention during the resentencing hearing was whether Defendant's murder sentence should run *concurrently* with his kidnapping sentence—as opposed to keeping the two sentences consecutive.  Defendant's trial counsel argued that the kidnapping sentence should run concurrently with the murder sentence "based upon the [mitigating] factors that *Miller* put forth for a judge to consider[.]"[1]  Namely, defense counsel presented evidence that Defendant was 16 years old at the time of the crime; was interrogated by the police for 26 hours (without a parent or guardian present) before confessing; had an IQ of 81 (in the borderline-

---

[1] These mitigating factors include:

    (1) Age at the time of the offense.
    (2) Immaturity.
    (3) Ability to appreciate the risks and consequences of the conduct.
    (4) Intellectual capacity.
    (5) Prior record.
    (6) Mental health.
    (7) Familial or peer pressure exerted upon the defendant.
    (8) Likelihood that the defendant would benefit from rehabilitation in confinement.
    (9) Any other mitigating factor or circumstance.

N.C. Gen. Stat. § 15A-1340.19B(c) (2019).

impairment range); was evaluated for intellectual capacity to proceed prior to his trial; and was diagnosed with bipolar disorder but was not receiving medication or treatment at the time of trial. Defense counsel also stated that Defendant's LWOP sentence made him ineligible to participate in prison educational programs, and that Defendant was engaging in self-improvement in prison by developing a program to assist at-risk youth.

¶ 12 The trial court then requested clarification on whether the statute permitted this type of concurrent sentencing, asking counsel whether there was "any authority under § 15A-1340.19B . . . that permits the Court to modify the order in which the sentence is run, as opposed to modifying the 25 to life?" Defense counsel responded that concurrent sentences were permitted under *Miller* because the kidnapping arose from the same series of transactions that resulted in the felony murder.

¶ 13 In response, the State argued that the kidnapping and murder sentences should remain consecutive, due to the serious nature of the crime and due to Defendant's numerous, repeated infractions while in prison. These prison infractions ran from 2008 through February 2019, and included offenses such as "weapon possession," "involvement with a gang," "assault on a staff with a weapon," "involvement with a gang," and "active rioter." The State noted that some infractions had even occurred during the pendency of Defendant's MAR, asserting that this demonstrated that Defendant had the opportunity to reform but chose not to, and

that Defendant was "not someone who should get the benefit of these sentences running together."

¶ 14        With regard to the two armed robbery convictions, defense counsel described these convictions as "two other consecutive sentences from matters that are not before this Court[,]" further stating that the murder and kidnapping convictions were "the only two sentences that are at issue before the Court today." The trial court sought to clarify which sentences were before it:

> THE COURT: Just to make sure I understand. All right. First, there are two consecutive armed robbery sentences that the Defendant has already served.
>
> DEFENSE COUNSEL: It depends how DOC actually would calculate that. However, [the armed robbery sentences] are not at issue here because they are not related to this particular conduct. They were sentenced at the same time as this was, but it was not part of that trial.
>
> THE COURT: All right. So there are two sentences that he has served or he will have to serve.
>
> DEFENSE COUNSEL: There are. The DOC website shows that he would have been released in February of 2012 in one of them. So it does show that those would be the first sentences he would be serving. This is from the DOC website and from combined records as to how it was imposed. [S]o the two armed robbery sentences were imposed by DOC prior to the 25 to life.

¶ 15        The trial court requested further explanation on some matters and clarified the following: (1) judgment had already been arrested on Defendant's attempted armed robbery conviction; (2) the unarrested judgment on Defendant's kidnapping

conviction imposed a minimum of 29 months, due to having been sentenced at a lower class; (3) the two armed robbery sentences remained undisturbed after previous appellate review; and (4) Defendant had fully served his first armed robbery sentence and had either almost served the second armed robbery sentence or had just started to serve his murder sentence.

¶ 16     After hearing all arguments and evidence, the trial court concluded that Defendant should be resentenced in accord with *Miller* on the murder charge, but chose not to modify the consecutive nature of the kidnapping charge. In a written order entered on 4 September 2019, the trial court resentenced Defendant as follows:

> (1) The Defendant is resentenced on the First Degree Murder charge . . . to a sentence of life with the possibility of parole after 25 years.
>
> (2) Based upon the information presented at the resentencing hearing, the Court in its discretion, does not modify the consecutive nature of the First Degree Kidnapping charge . . . and the 29 to 44 month sentence previously imposed for that crime will continue to run consecutively.
>
> (3) The Court specifically finds that consecutive sentences are warranted by the facts presented at the resentencing hearing and consecutive sentences in this case are not violative of the Eight Amendment to the United States Constitution.
>
> (4) Based upon the felony murder conviction the Court will arrest judgment in the Attempted Robbery with a Firearm [charge].

¶ 17     The trial court's order made no reference to Defendant's two armed robbery

convictions. Defendant gave oral notice of appeal at the conclusion of the resentencing hearing.

## II. Analysis

¶ 18        On appeal, Defendant raises three primary arguments, contending that: (1) the trial court erred by only resentencing him on the murder and kidnapping convictions (while ignoring the two armed robbery convictions); (2) his attorney provided ineffective assistance of counsel at his resentencing hearing; and (3) the trial court violated the Eighth Amendment by resentencing him to over 43 years in prison. We discern no error on issues one and two, and decline to rule on issue three. Accordingly, we affirm the trial court's ruling on issues one and two and dismiss without prejudice Defendant's Eighth Amendment claim.

### A. Structured Resentencing

¶ 19        Defendant first argues that the trial court erred by only considering the murder and kidnapping convictions during his resentencing, contending that the trial court should have also considered his two armed robbery convictions. He also argues that the trial court erred by maintaining his sentences as consecutive instead of concurrent. We disagree, and conclude that that trial court committed no error during resentencing.

¶ 20        To begin with, it may be useful to provide some background regarding the applicable juvenile sentencing scheme in North Carolina. Prior to *Miller*, a juvenile

defendant who committed first-degree murder in North Carolina would receive mandatory LWOP. *See* N.C. Gen. Stat. § 14-17 (2007). In 2012, the United States Supreme Court held in *Miller* that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders," and that a sentencing judge "must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." 567 U.S. at 479-89.

¶ 21 In order to comply with *Miller*, in late 2012 our General Assembly enacted N.C. Gen. Stat. § 15A-1340.19,[2] which set out the new sentencing procedures applicable to a defendant "who is convicted of first degree murder, and who was under the age of 18 at the time of the offense." N.C. Gen. Stat. § 15A-1340.19A (2019). The statute provides that if "the sole basis for" the juvenile defendant's conviction "was the felony murder rule, then the court *shall* sentence the defendant to life imprisonment with parole"—meaning that "the defendant shall serve a minimum of 25 years imprisonment prior to becoming eligible for parole." *Id.* § 15A-1340.19A, .19B (emphasis added). The statute also provides a list of mitigating factors (as described above, in footnote one) that a court may consider when sentencing a juvenile offender. *See id.* § 15A-1340.19B(c).

---

[2] Our Supreme Court has held that this statute fully complies with the mandate from *Miller*. *See State v. James*, 371 N.C. 77, 89, 813 S.E.2d 195, 204 (2018).

¶ 22        However, the statute provides no guidance regarding whether or not a juvenile offender's murder sentence should be run concurrently with (or consecutive to) any other sentences that the juvenile may be subject to.  Due to this omission in § 15A-1340.19, Defendant looks elsewhere in our General Statutes for guidance on the proper ordering of his sentences.  Specifically, Defendant relies on a portion of the Criminal Procedure Act which provides that

> [w]hen multiple sentences of imprisonment are imposed on a person at the same time or when a term of imprisonment is imposed on a person who is already subject to an undischarged term of imprisonment . . . the sentences may run either concurrently or consecutively, as determined by the court.  If not specified or not required by statute to run consecutively, sentences shall run concurrently.

N.C. Gen. Stat. § 15A-1354(a) (2019).

¶ 23        Based upon the language of § 15A-1354(a), Defendant contends that the trial court possessed the authority to resentence him on *all* of his convictions, and to impose concurrent terms in all sentences.  Defendant argues that the trial court misapprehended the scope of its sentencing authority, asserting that the transcript demonstrates that the trial court believed it was only permitted consider his murder and kidnapping convictions.  Due to this alleged misapprehension of law by the trial court, Defendant claims that the trial court abused its discretion during his resentencing and that he is entitled to a new hearing.  We find this argument unavailing.

¶ 24    Most prominently, we believe Defendant's argument conflates two distinct issues: (1) whether the trial court possessed the authority to run his sentences concurrently as opposed to consecutively; and (2) whether the trial court possessed the authority to consider the two armed robbery convictions. We answer each question in turn.

### 1. *Concurrent vs. Consecutive Sentences*

¶ 25    First, we agree with Defendant that the trial court possessed authority to run his murder and kidnapping sentences either concurrently or consecutively, but discern no abuse of discretion in the trial court's decision to keep his sentences consecutive. Defendant is correct that § 15A-1354(a) grants a trial court the authority to choose between consecutive or concurrent sentences when "multiple sentences of imprisonment are imposed on a person at the same time." N.C. Gen. Stat. § 15A-1354(a) (2019). Here, Defendant was sentenced to all of his sentences of imprisonment "at the same time," during his original sentencing proceeding on 28 May 2004. Thus, based on the language of § 15A-1354(a), the trial court was authorized to impose either concurrent or consecutive sentences for all of the convictions which were before the Court for resentencing.[3]

¶ 26    However, the trial court here chose to keep Defendant's sentences consecutive,

---

[3] As explained in the following section, in this case Defendant's two armed robbery sentences were not before the trial court for resentencing.

and we are unable to say that this choice was an abuse of the court's discretion. As we have previously explained, "N.C. Gen. Stat. § 15A-1354 vests the trial court with the discretion to elect between concurrent or consecutive sentences for a defendant faced with multiple sentences of imprisonment," and we review a trial court's sentencing decision in this context for "abuse of discretion." *State v. Hill*, 262 N.C. App. 113, 120-21, 821 S.E.2d 631, 636-37 (2018). *See also State v. Duffie*, 241 N.C. App. 88, 96-97, 772 S.E.2d 100, 107 (2015) ("[T]he trial court may exercise its discretion in determining whether to impose concurrent or consecutive sentences . . . [under] N.C. Gen. Stat. § 15A-1354(a)."). Moreover, "[w]hen the trial court gives no reason for a ruling that must be discretionary, we presume on appeal that the court exercised its discretion." *State v. Starr*, 365 N.C. 314, 318, 718 S.E.2d 362, 365 (2011).

¶ 27 The record in this case demonstrates that the trial court knew it possessed discretion to sentence Defendant consecutively and exercised that discretion reasonably. During the resentencing hearing, defense counsel requested that the murder and kidnapping sentences run concurrently due to Defendant's young age, mental health issues, and desire to participate in prison educational programs, while the State argued that the sentences should run consecutively due to the nature of the crime and Defendant's numerous infractions while in prison. The trial court then requested clarification as to whether § 15A-1340.19B provided authority to "modify the order in which the sentence is run, as opposed to modifying the 25 to life?"

After hearing all arguments and "considering all these matters," the trial court, in its discretion, denied Defendant's request to run the sentences consecutively. The trial court also memorialized this ruling in a written order, which stated that "[b]ased upon the information presented at the resentencing hearing, the Court *in its discretion,* does not modify the consecutive nature of the First Degree Kidnapping charge . . . . The Court specifically finds that consecutive sentences are warranted by the facts presented at the resentencing hearing." (Emphasis added.)

This language clearly indicates that the trial court (1) knew it possessed discretion to reorder Defendant's sentences; and (2) duly exercised that discretion by considering all facts presented at the resentencing hearing in reaching its decision. The trial court was under no obligation to provide a lengthy explanation for its resentencing decision. We accordingly hold that the trial court did not abuse its discretion in resentencing Defendant without modifying the consecutive nature of the sentences.

### 2. *Armed Robbery Sentences*

Next, we must consider the distinct question of whether the trial court should have also resentenced Defendant on the two armed robbery convictions. We conclude that Defendant has not preserved this argument for appellate review, and that in any event, the two armed robbery convictions were not before the trial court for resentencing.

¶ 31     First, Defendant has failed to preserve this issue for appellate review, in two

distinct ways.  Most notably, Defendant's oral notice of appeal at the close of his

resentencing hearing did not vest this Court with jurisdiction over the undisturbed

armed robbery judgments, which were originally entered during Defendant's first

sentencing in 2004, and remained undisturbed throughout the subsequent appeals.

In the 2017 order which granted Defendant's MAR, Judge Gottlieb ordered a limited-

scope resentencing, only for purposes of (1) resentencing Defendant on his LWOP

murder sentence (in accord with *Miller*); and (2) arresting judgment on either the

kidnapping or attempted armed robbery sentence (in accord with this Court's earlier

remand that was ordered in our 2005 opinion).  Thus, there existed no court order or

other authority which would have allowed Defendant a *de novo* resentencing hearing

on his armed robbery convictions.

¶ 32     Second, Defendant has failed to preserve this issue for our review by failing to

raise it before the trial court.  Our Appellate Rules provide that

> [i]n order to preserve an issue for appellate review, a party
> must have presented to the trial court a timely request,
> objection, or motion, stating the specific grounds for the
> ruling the party desired the court to make . . . [i]t is also
> necessary for the complaining party to obtain a ruling upon
> the party's request, objection, or motion.

N.C. R. App. P. Rule 10(a)(1).

¶ 33     In interpreting this Rule, our courts have long held that "where a theory

argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts." *State v. Holliman*, 155 N.C. App. 120, 123, 573 S.E.2d 682, 685 (2002) (internal marks and citations omitted). Accordingly, where a defendant "impermissibly presents a different theory on appeal than argued at trial, [the] assignment of error [is] not properly preserved" and is "waived by [the] defendant." *Id*. at 124, 573 S.E.2d at 686.

¶ 34      Here, Defendant has failed to preserve his argument regarding the two armed robbery sentences because, during his resentencing hearing, he did not argue that the trial court should consider his two armed robbery convictions alongside the murder and kidnapping convictions—in fact, he argued the exact opposite. During the hearing, defense counsel stated on multiple occasions that the kidnapping and murder convictions were "the only two sentences that are at issue before the Court today." Defense counsel stated her belief that the two armed robbery sentences were "not at issue here because they are not related to this particular conduct," in that the armed robberies occurred several days prior to the kidnapping and murder. The prosecution agreed that the armed robbery sentences were not before the court.

¶ 35      Defendant cannot argue before the trial court that these convictions should not be considered, and then argue on appeal that they must be considered—this is an impermissible attempt to swap horses on appeal. Thus, this assignment of error has not been properly preserved and has been waived by Defendant.

¶ 36        However, we nevertheless choose to examine the merits of Defendant's claim, in our discretion, because the issues surrounding the two armed robbery sentences are also relevant to Defendant's ineffective assistance of counsel claim (which is analyzed in the following section). We ultimately conclude that the trial court acted properly in not considering the two armed robbery sentences, because, as Defendant's trial counsel correctly noted, those sentences stemmed from a separate transaction that was not before the court. Our state's *Miller* jurisprudence shows that when a juvenile offender is awarded a *Miller* resentencing hearing, the juvenile is only entitled to be resentenced on his murder conviction (i.e., the conviction for which he received mandatory LWOP), and is not entitled to be resentenced for unrelated convictions which arose out of a different transaction.

¶ 37        Following the United States Supreme Court's decision in *Miller*, and our General Assembly's enactment of N.C Gen. Stat. § 15A-1340.19, a juvenile offender who previously received a mandatory LWOP sentence "is entitled to be resentenced in the case in which he was convicted of first-degree murder pursuant to [N.C. Gen. Stat. § 15A-1340.19]." *State v. Perry*, 369 N.C. 390, 393, 794 S.E.2d 280, 281-82 (2016). For example, in *Perry*, the defendant was convicted of armed robbery and first-degree murder for an incident that occurred when he was seventeen years old. *Id*. at 391, 794 S.E.2d at 280. He was originally sentenced to 51 to 71 months for the robbery conviction, and a consecutive term of mandatory LWOP for the murder

conviction. *Id*. at 391, 794 S.E.2d at 280-81.

¶ 38 Following the decision in *Miller*, the defendant filed an MAR requesting that his LWOP sentence be vacated. *Id*. at 391, 794 S.E.2d at 281. On review, our Supreme Court agreed that the defendant was entitled to a retroactive *Miller* resentencing hearing "in the case in which he was convicted of first-degree murder." *Id*. at 393, 794 S.E.2d at 281. The Court accordingly remanded to the trial court "for further proceedings not inconsistent with this opinion, including the imposition of a new sentence in the case in which defendant was convicted of first-degree murder." *Id*. at 393, 794 S.E.2d at 282. Notably, the Court did *not* remand the robbery conviction for resentencing—despite the fact that both convictions were originally imposed at the same time.

¶ 39 Likewise, in *State v. Lovette*, the defendant was convicted of kidnapping, armed robbery, and first-degree murder for an incident that occurred when he was seventeen years old. *State v. Lovette*, 225 N.C. App. 456, 460, 737 S.E.2d 432, 436 (2013). He was originally sentenced to LWOP for the murder conviction, as well as consecutive terms of 100 to 129 months for the kidnapping conviction and 77 to 102 months for the robbery conviction. *Id*. Following the decision in *Miller*, the defendant filed an MAR requesting that his LWOP sentence be vacated. *Id*. On review, this Court held that the defendant was entitled to be resentenced under *Miller* and N.C. Gen. Stat. § 15A-1340.19. *Id*. at 470-71, 737 S.E.2d at 441-42. We accordingly vacated and

remanded "Defendant's sentence of life imprisonment without parole . . . for resentencing as provided in the Act." *Id*. at 471, 737 S.E.2d at 442. Just as in *Perry*, we did not remand the defendant's robbery and kidnapping convictions for resentencing—despite the fact that all three convictions were originally imposed at the same time.

¶ 40 *Perry* and *Lovette* demonstrate that a juvenile offender in North Carolina who is awarded a resentencing hearing in accord with *Miller* and § 15A-1340.19 is only statutorily entitled to be resentenced for his murder conviction (i.e., the conviction for which he was sentenced to LWOP)—and is not automatically entitled to be resentenced for any other convictions which may have been imposed at the same time as his murder conviction. Accordingly, in the present case Defendant was only statutorily entitled to be resentenced for his murder conviction, and the trial court committed no error by failing to consider his two armed robbery convictions (which arose out of an entirely different transaction).

¶ 41 In sum, we hold that: (1) the trial court did not abuse its discretion by resentencing Defendant without modifying the consecutive nature of the kidnapping and murder sentences; and (2) the trial court was under no obligation to resentence Defendant on his two unrelated armed robbery convictions.

**B. Ineffective Assistance of Counsel**

¶ 42 Next, Defendant argues that he received ineffective assistance of counsel at his

resentencing hearing. Defendant contends that his counsel erred by informing the trial court that the armed robbery convictions were "unrelated" and "not before the court," and maintains that he was prejudiced by this error because the trial court might otherwise have considered running his murder sentence concurrently with his armed robbery sentences. We are unpersuaded by this argument, and hold that Defendant's counsel did not perform deficiently.

¶ 43    Under the United States and North Carolina Constitutions, a defendant has a right to the effective assistance of counsel during both trial and sentencing proceedings. *State v. Braswell*, 312 N.C. 553, 561, 324 S.E.2d 241, 247-48 (1985). In order to succeed on a claim for ineffective assistance of counsel, a defendant must do the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, *a trial whose result is reliable.*

*Id.* at 562, 324 S.E.2d at 248 (quoting *Strickland v. Washington*, 466 U.S. 668 (1984)).

¶ 44    The United States Supreme Court, further elaborating on the prejudice prong, has explained that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland*, 466 U.S. at 694. "Because of the difficulties inherent in making the [prejudice] evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

For the first prong of the *Strickland* test—deficient performance—Defendant argues here that his counsel acted deficiently by "[telling] the trial court repeatedly that the robbery convictions were unrelated and not before the court." Instead, Defendant maintains that counsel should have relied on § 15A-1354(a) to persuade the trial court that it was authorized to resentence Defendant on *all* of his convictions, given that all of his convictions were originally "imposed. . . at the same time" within the meaning of the statute. We disagree.

When evaluating counsel's performance, we seek to analyze whether their conduct "falls within the wide range of reasonable professional assistance." *State v. McNeill*, 371 N.C. 198, 219, 813 S.E.2d 797, 813 (2018). "[C]ounsel is given wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for the defendant to bear." *Id.* at 218-19, 813 S.E.2d at 812.

It is well-established that counsel's failure to raise a particular argument or theory does not amount to deficient performance where that argument was either

meritless or rested on uncertain, undecided law. *See Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) ("The law does not require counsel to raise every available nonfrivolous defense."); *United States v. Parrott*, 906 F.3d 717, 719 (8th Cir. 2018) ("[F]ailing to raise an argument that requires the resolution of an unsettled legal question rarely constitutes ineffective assistance.") (internal marks and citation omitted); *State v. Garcell*, 363 N.C. 10, 54, 678 S.E.2d 618, 646 (2009) (finding no deficient performance in defense counsel's failure to raise a particular legal doctrine, "as . . . [the doctrine] has no application to this case . . . defendant's counsel did not deficiently perform by failing to object on the basis of [the doctrine]."); *State v. Fair*, 354 N.C. 131, 168, 557 S.E.2d 500, 526 (2001) ("As detailed in our previous analysis[,] . . . [t]here was no basis for an objection by trial counsel, and thus there was no ineffective assistance of counsel.").

¶ 48    Here, the resentencing argument that Defendant contends his counsel should have raised was, at best, resting on unsettled law, and at worst, meritless. As explained above, we believe that Defendant's request for a *de novo* resentencing on all of his convictions was meritless for several reasons, including the fact that: (1) the MAR order granting Defendant a limited resentencing hearing did not grant the trial court jurisdiction over the armed robbery sentences; and (2) our state's *Miller* jurisprudence allows a juvenile offender to be resentenced only for his murder conviction (i.e., the conviction for which he received mandatory LWOP), and does not

automatically entitle him to be resentenced for other unrelated convictions.

¶ 49 At best, defense counsel might have been able to raise a colorable argument that § 15A-1354(a) somehow overrides the above-mentioned laws and grants the trial court authority to consider convictions that were not otherwise before it. But we can find no precedent supporting such an argument. Therefore, we conclude that Defendant's trial counsel did not act deficiently by failing to raise this speculative and untested argument.

¶ 50 As for the second prong of the *Strickland* test—prejudice—Defendant likewise cannot show that he was prejudiced by defense counsel's failure to request that the trial court consider the armed robbery convictions for resentencing. Proving prejudice requires a showing of "a reasonable probability" that "the result of the proceeding would have been different" if counsel had not erred. *State v. Lane*, 271 N.C. App. 307, 312, 844 S.E.2d 32, 38 (2020) (internal marks and citation omitted). Here, *even if* defense counsel had requested that the trial court consider the armed robbery sentences under § 15A-1354(a), and *even if* the court was persuaded by this argument, we think it a highly remote possibility that the trial court would have actually chosen to run these sentences concurrently as Defendant now requests.

¶ 51 During the resentencing hearing, the trial court heard thorough arguments from both parties regarding a range of mitigating and aggravating circumstances surrounding the serious nature of Defendant's offenses (including the fact that he

was the one who shot and killed Jester), his personal background and abilities, and his misconduct while in prison. The State recited Defendant's long list of prison infractions, including weapon possession; involvement with a gang, assault on staff with a weapon; and active rioting. The State persuasively argued that there was no evidence of Defendant making any efforts to reform, and that Defendant was "not someone who should get the benefit of these sentences running together."

¶ 52      Based on the evidence presented, the trial court chose not to consolidate the two sentences that were before it (murder and kidnapping), instead exercising its discretion to keep these sentences consecutive. Given that the trial court was apparently unwilling to reduce Defendant's sentence by approximately 29 months via consolidation of the murder and kidnapping sentences, it seems quite unlikely that the trial court would have chosen to reduce his sentence by approximately 190 months via consolidation of the two armed robbery sentences. We can discern no reasonable probability that the results of the resentencing would have been different even if counsel had made the arguments requested by Defendant. Thus, because Defendant cannot show either deficient performance by his counsel or resulting prejudice, this assertion of error is overruled.

## C. Eight Amendment

¶ 53      In Defendant's third and final assertion of error, he contends that the trial court violated the Eighth Amendment by sentencing him to *de facto* LWOP. He points

out that the sentences imposed by the trial court carry an aggregate minimum of 43 years in prison before the possibility of parole—meaning he will be 61 years old before he becomes eligible for parole. Defendant contends that, under the United States Supreme Court's decision in *Miller*, this sentence violates the Eighth Amendment prohibition against cruel and unusual punishment.

¶ 54 However, as Defendant acknowledges in his brief, neither the United States Supreme Court nor the North Carolina Supreme Court have yet ruled on the novel issue of *de facto* life sentences under *Miller*. This Court recently issued an opinion on this issue in *State v. Kelliher*, wherein we held that "*de facto* LWOP sentences for redeemable juveniles are unconstitutional," and wherein we struck down the defendant's sentence which would have made him "eligibl[e] for parole at 50 years and earliest possible release at age 67." *State v. Kelliher*, 849 S.E.2d 333, 344-49 (N.C. Ct. App. 2020), *review allowed, writ allowed, appeal dismissed*, 854 S.E.2d 584 (N.C. 2021), *review allowed*, 854 S.E.2d 586 (N.C. 2021).[4] Our Supreme Court subsequently issued a stay of this Court's mandate in *Kelliher*, pending its discretionary review of that case. *State v. Kelliher*, 854 S.E.2d 586 (N.C. 2021). The

---

[4] This Court also issued a recent opinion in *State v. Anderson* which held the opposite—that "a 50-year sentence [for a juvenile offender] does not equate to a *de facto* life sentence," and that such a sentence does not violate *Miller*. *State v. Anderson*, 853 S.E.2d 797, 798 (N.C. Ct. App. 2020), *writ allowed*, 376 N.C. 885, 853 S.E.2d 445 (2021). Due to the existence of these two conflicting cases from this Court, we are confident that the Supreme Court will resolve this issue in the pending *Kelliher* appeal.

case is currently docketed in the Supreme Court, awaiting argument.

¶ 55        Given the pending Supreme Court cases, which will definitively decide the constitutionality of *de facto* juvenile LWOP sentences under *Miller*, we decline to rule on Defendant's Eighth Amendment argument at this time. We therefore dismiss this claim without prejudice, such that it may be asserted in a subsequent MAR, in anticipation of our Supreme Court's forthcoming decision in *Kelliher*.

### III.    Conclusion

¶ 56        The trial court did not abuse its discretion by maintaining Defendant's murder and kidnapping sentences as consecutive, rather than concurrent. The trial court did not err in failing to resentence Defendant's two armed robbery convictions, as the court possessed no authority to consider these convictions. Defendant did not receive ineffective assistance of counsel at his resentencing proceeding. Finally, though Defendant raises a colorable Eighth Amendment claim regarding *de facto* juvenile LWOP sentences, we decline to rule on this issue at this time and dismiss this claim without prejudice, in anticipation of our Supreme Court's pending decision in *Kelliher*.

NO ERROR.

Chief Judge STROUD concurs.

Judge ARROWOOD concurs in part and dissents in part by separate opinion.

ARROWOOD, Judge, concurring in part and dissenting in part.

I concur in the portions of the majority opinion which address defendant's structured resentencing and Eighth Amendment claims. I respectfully dissent from the majority's holding that defendant received effective assistance of counsel.

The majority correctly identifies the two-prong test set out in *Strickland v. Washington*, which requires a defendant to show that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674 (1984)). "[I]f a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." *Id.* at 563, 324 S.E.2d at 249.

## I.    Deficient Performance

Our Supreme Court has held that for counsel's performance to be deficient, it must fall "below an objective standard of reasonableness[.]" *State v. Garcell*, 363 N.C. 10, 51, 678 S.E.2d 618, 644 (2009) (citations omitted). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984).

[S]trategic choices made after thorough investigation of

law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91, 80 L. Ed. 2d at 695. Our courts indulge "the presumption that trial counsel's representation is within the boundaries of acceptable professional conduct." *State v. Campbell*, 359 N.C. 644, 690, 617 S.E.2d 1, 30 (2005) (citing *State v. Fisher*, 318 N.C. 512, 532, 350 S.E.2d 334, 346 (1986)).

Under N.C. Gen. Stat. § 15A-1354(a),

[w]hen multiple sentences of imprisonment are imposed on a person at the same time or when a term of imprisonment is imposed on a person who is already subject to an undischarged term of imprisonment, including a term of imprisonment in another jurisdiction, the sentences may run either concurrently or consecutively, as determined by the court.

N.C. Gen. Stat. § 15A-1354(a) (2019). Although a trial court is prohibited from imposing a more severe sentence upon remand than originally imposed, "nothing prohibits the trial court from changing the way in which it consolidate[s] convictions during a sentencing hearing prior to remand." *State v. Moffitt*, 185 N.C. App. 308, 312, 648 S.E.2d 272, 274 (2007) (quoting *State v. Ransom*, 80 N.C. App. 711, 713, 343

S.E.2d 232, 234, *cert. denied*, 317 N.C. 712, 347 S.E.2d 450 (1986)).  The trial court has discretion to determine whether to impose concurrent or consecutive sentences. *State v. Parker*, 350 N.C. 411, 441, 516 S.E.2d 106, 126 (1999).

¶ 61        At the resentencing hearing, defendant's trial counsel repeatedly described defendant's robbery sentences, one of which defendant had served and the other which was either already or nearly complete, as unrelated and not before the trial court.  Defendant's trial counsel maintained this position when the trial court specifically requested clarification that there were "two consecutive armed robbery sentences that the defendant has already served[,]" and defendant's trial counsel failed to raise any argument regarding those convictions when the trial court discussed its authority under Section 15A-1340.19B.

¶ 62        Although I acknowledge the deference afforded to counsel's judgments, I disagree with the majority's holding that the resentencing argument defendant contends his trial counsel should have raised was either resting on unsettled law or totally meritless.  Defendant was originally sentenced to multiple terms of imprisonment at the same time, and thus the trial court could either run the sentences concurrently or consecutively under Section 15A-1354(a).  Nothing prohibited the trial court from changing the way in which all of defendant's convictions were consolidated, including the two convictions for robbery with a firearm.  I disagree with the majority's position that Section 15A-1354(a) must

"override" the MAR order and our state's *Miller* jurisprudence. The plain meaning of the statute includes defendant, as a person with "multiple sentences of imprisonment" imposed "at the same time," and as such I would hold that Section 15A-1354(a) is applicable to defendant's sentences and that the trial court had jurisdiction and discretion to consider running all sentences either concurrently or consecutively. Defendant's trial counsel's insistence that the armed robbery convictions were not before the court, when in fact it was in the trial court's discretion to consider them, was unreasonable and constitutes deficient performance.

## II.    Prejudice

Prejudice under the ineffective assistance of counsel test requires a showing of "reasonable probability" that, "but for *counsel's* unprofessional errors, the result of the proceeding would have been different." *State v. Lane*, 271 N.C. App. 307, 313, 844 S.E.2d 32, 39, *review dismissed*, 376 N.C. 540, 851 S.E.2d 367, *review denied*, 376 N.C. 540, 851 S.E.2d 624 (2020) (emphasis in original) (citing *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citation omitted). Under the reasonable probability standard, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693, 80 L. Ed. 2d at 697. "While under the reasonable probability standard '[t]he likelihood of a different result must be substantial, not just conceivable[,]', it is

something less than that required under plain error." *Lane*, 271 N.C. App. at 314, 844 S.E.2d at 39 (quoting *Harrington v. Richter*, 562 U.S. 86, 112, 178 L. Ed. 2d 624, 647 (2011)).

¶ 64    Here, I would hold that there was a reasonable probability that but for defendant's trial counsel's arguments, the result of the hearing would have been different. The trial court asked defendant's trial counsel multiple times for clarification of the sentences and convictions before it, and at no point did defendant's trial counsel attempt to seek resentencing for all of defendant's convictions. It is substantially likely, not just conceivable, that the trial court would have exercised its discretion to consider all of defendant's convictions in resentencing had defendant's trial counsel presented the argument. Accordingly, I would hold that defendant was prejudiced by his trial counsel's errors and would remand for resentencing to consider all of defendant's convictions, rather than only the murder and kidnapping convictions.